IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

*vs*.

| | |
|---|---|
| **LARRY A. LYONS,** | **CRIMINAL ACTION NO. 2:05CR19-4** |
| **BILLY GEORGE LEARY, JR.,** | **CRIMINAL ACTION NO. 2:05CR19-5** |
| **Defendants.** | |

## REPORT AND RECOMMENDATION/OPINION

On the 13th day of September, 2005, came the defendants, Larry A. Lyons, in person and through counsel John J. Wallace, IV, and Billy George Leary, Jr., in person and by counsel Dwight R. Hall, and also came the United States by its Assistant United States Attorney, Stephen Warner, for a hearing on Defendants' respective Motions to Suppress [Docket Entries 57 and 66].

The undersigned received the testimony of Randolph County Sheriff's Deputy Lee Michael Wright; received exhibits in evidence; and heard arguments of counsel.

### Procedural History

Defendants Lyons and Leary were indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on June 22, 2005. The indictment charges both defendants with Conspiracy to Manufacture and to Distribute Methamphetamine and Aiding and Abetting the Manufacture of Methamphetamine [Docket Entry 2]. Arrest warrants were issued on June 22, 2005, by United States District Judge Robert E. Maxwell. Defendants appeared before United States Magistrate Judge John S. Kaull on July 29, 2005.

### Facts

The undersigned finds the following testimony and evidence credible, and therefore recommends these findings of fact. On May 3, 2005, Deputy Wright, while off duty, saw two people

cross the road in front of him carrying a white trash bag with something in it. He recognized one of the men to be Lyons, whom he had seen at a family court hearing in which the deputy was acting as Bailiff. On that occasion the deputy had noticed Lyons appeared agitated and suspected Lyons might have been under the influence. He also had been advised Lyons had been involved in drugs. Deputy Wright did not know the other man, later identified as co-defendant Billy George Leary.

As he drove past the two men, it appeared to Deputy Wright that Lyons was telling Leary to continue walking and not to go into the woods. He testified he saw Lyons grab Leary's shirt, as if to keep him from going into the woods until Wright was out of sight. Deputy Wright called for back up at this point because he believed the two men's behavior was suspicious. He testified it was not common to see people walking in that area carrying white trash bags. As soon as he passed Lyons and Leary and made a right hand turn, he saw the two men go into the woods. He testified it appeared to him they had just been waiting for him to turn the corner before they went into the woods.

Deputy Wright turned around and drove back toward where the two men had entered the woods. As he approached, he could see two men crouched down in the woods. At that point he decided to stop his car and get out. When he pulled over, the men continued to crouch down in the woods. He testified he at first suspected they were either planting or harvesting marijuana plants. He stopped and exited his vehicle. He had his badge in one hand and his gun in the other and identified himself as a Randolph County Deputy Sheriff. Lyons stood up when Deputy Wright identified himself. The deputy could see Leary still moving in the woods. Leary and Lyons had been only about five feet away from each other, yet Lyons came out of the woods and insisted he was alone and was just "taking a leak" in the woods. He refused to say who was with him. Deputy

Wright did not see the white trash bag at this point. He handcuffed Lyons and waited for back up to arrive. He continued to look for Leary. He then saw that his back up, Deputy Brady, had arrived, and had taken Leary into custody. Deputy Wright then took Lyons to Deputy Brady's vehicle. Deputy Brady patted down Leary, finding coffee filters and a marijuana pipe with residue in it. The officers recovered the white trash bag from a ditch. Leary made a subsequent statement that he had been carrying the white trash bag. The officers also went into the woods, finding a glass globe with a liquid in it, within 10 to 15 yards from where Deputy Wright had first contacted the two defendants.

The defendants then gave consent to search Lyons' vehicle. Lyons signed a written consent. Deputy Wright testified he and Deputy Brady seized a Liquid Fire Bottle sample, Kroger brand salt, coffee filters, a white Mason Jar, and a one-gallon milk jug from the white trash bag. They seized Orange Pro, a Sunbeam brand mixer, and a sample from an open plastic container from the vehicle. Lyons never told Deputy Wright the white trash bag was his. Lyons was not seen with the globe from the woods in his possession, nor did he acknowledge it.

### **Contentions of the Parties**

The decision of the Court in this case as to whether to suppress or not suppress the evidence and the fruits of the evidence seized rises and falls upon whether Deputy Wright had reasonable articulable suspicion to stop Lyons and Leary. Defendants argue the deputy did not have reasonable articulable suspicion to stop them, and therefore the stop and subsequent searches and statements are all inadmissable.

The Government argues Deputy Wright had reasonable articulable suspicion to stop Lyons and Leary.

**Discussion**

"(T)he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581-85, 104 L.Ed.2d 1 (1989). "The level of suspicion required to justify a search under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), must be based on more than an 'inchoate and unparticularized suspicion or hunch,' but it need not rise to the level of probable cause to survive scrutiny under the Fourth Amendment." Id. at 22-24, 88 S.Ct. at 1880-81; United States v. Perrin, 45 F.3d 869 (4th Cir. 1995). "'Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." Perrin, supra, citing United States v. Wilson, 953 F.2d 1116, 124 (4th Cir. 1991).

Whether there is reasonable suspicion depends on the totality of the circumstances, including the information known to the officer and any reasonable inference to be drawn at the time of the stop. United States v. Arvizu, 544 U.S. 266 (2002); United States v. Crittendon, 883 F.2d 326, 328 (4th Cir. 1989).

The legitimacy of an investigative stop thus turns on what constitutes "reasonable suspicion," which the Fourth Circuit has called "a common-sensical proposition . . . [properly] crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). Accord Arvizu, 544 U.S. at 273 (permitting

"officers to draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."

Because the intrusion created by an investigative stop is minimal, the reasonable suspicion standard is not onerous. See, e.g., United States v. Harris, 39 F.3d 1262, 1268-69 (4th Cir. 1994) (officer's observation of man leaving apartment in a vehicle after confidential informant advised drug delivery was imminent constitutes reasonable suspicion to stop vehicle); United States v. Turner, 933 F.2d 240 242-244 (4th Cir. 1991)(officer with experience in narcotics investigations had reasonable suspicion to stop and determine whether subject was "cooking" illegal drugs after observing her carry cup of water out of convenience store, walk to car, and lean over front seat as if to hide something); and United States v. Moore, 817 F.2d 1105, 1107 (4th Cir. 1987) (officer's nighttime observation of man walking away from otherwise deserted area where burglar alarm had just gone off constituted reasonable suspicion to stop man).

On the other hand, neither an officer's reliance on a "mere hunch," Arvizu, 544 U.S. at 274, nor an uncorroborated anonymous tip, is sufficient to establish reasonable suspicion. Accord Florida v. J.L., 529 U.S. 266, 270-274 (2000) (an anonymous telephone tip that young black male at bus stop wearing a plaid shirt was carrying a gun did not constitute "reasonable suspicion"); United States v. Sprinkle, 106 F.3d 613, 618-619 (4th Cir. 1997)("reasonable suspicion" must include "particularized evidence that . . .criminal activity is afoot."

Many factors have been approved as properly contributing to "reasonable suspicion." Among them: (1) presence in a high crime area, United States v. Perkins, 363 F.3d 317 (4th Cir. 2004); (2) informant tips and information, including anonymous tips if there has been some

5

independent corroboration of the information, Alabama v. White, 496 U.S. 411 (1981); (3) lateness of the hour, Lender, 985 F.2d at 154; (4) observation by law enforcement of what appears to be a drug transaction or other criminal conduct based on their experience, Terry; (5) evasive conduct, United States v. Sharpe, 470 U.S. 675 (1985); Lender 985 F.2d at 154; United States v. Tate, 648 F.2d 939 (4th Cir. 1981) (attempt by subjects to hide their faces); (6) furtive behavior, United States v. Sims, 296 F.3d 284 (4th Cir. 2002)(anonymous tip that black male wearing certain clothing had just fired handgun followed by observation of man fitting description engaged in "furtive behavior" together constituted reasonable suspicion).

     Here, there is no allegation that Lyons and Leary were in a high crime area, except for the Government's assertion that Randolph County has had a "phenomenal rise in methamphetamine production." Deputy Wright, however, lives in the immediate area, and testified it was very unusual to see two men walking down the road carrying a white trash bag in that area. He then testified that the two men showed "furtive behavior," by waiting until he turned the corner to go into the woods. In fact, one appeared to be pulling the other by the shirt in what, to Deputy Wright, was an attempt to keep him from going into the woods while they could still be seen. When he subsequently turned around and drove back, the two men showed "evasive conduct" by crouching down in the woods, as if to hide. Lyons then lied to Deputy Wright, telling him he was alone in the woods, and had just stopped to urinate, whereas Deputy Wright had already seen Leary. In addition to this furtive and evasive behavior, Deputy Wright also had information that Lyons was "involved in the drug trade," and had personal experience with Lyons at a court hearing where he appeared to be "under the influence." The Court should "credit[] the practical experience of officers who observe what happens on a daily basis on the street." Lender, 985 F.2d at 154. In this case, the "street" was not

6

only an area where Deputy Wright worked, but an area near where he lived - - an area with which he was very familiar. The undersigned credits his suspicions regarding two men walking in that area carrying a white trash bag.

Based on the above, the undersigned finds Deputy Wright had reasonable, articulable suspicion to stop Lyons and Leary in order to investigate.

If reasonable suspicion to stop a suspect exists, the officer is entitled to conduct a frisk and limited search for weapons. United States v. Hensley, 469 U.S. 221 (1985). Deputy Brady patted down Leary and seized coffee filters and a marijuana bowl with residue inside. Under what the Supreme Court first called the "plain feel doctrine," contraband discovered during a Terry frisk may also be seized if its "contour or mass makes its identity [as contraband] immediately apparent." Minnesota v. Dickerson, 508 U.S. 366 (1993).

During the investigative stop, Deputy Wright also noticed the white trash bag in a nearby ditch. He recovered the trash bag and began "going through it," finding a Liquid Fire Bottle sample, salt, coffee filters, a white Mason jar and a gallon milk jug.

Nor does the fact that Deputy Wright walked toward the men with his gun and badge displayed turn the investigative stop into an arrest. In evaluating whether an initial stop constitutes a Terry stop or an arrest, a show of force does not necessarily connote arrest. See, e.g; United States v. Sinclair, 983 F.2d 598 (4th Cir. 1993)(use of drawn weapons to detain subjects did not convert investigative stop into arrest); and United States v. Manbeck, 744 F.2d 360 (4th Cir. 1984) (calling drawn weapons a "justified safety precaution" in a Terry stop.)  Nor does the fact that Lyons was handcuffed while Deputy Wright looked for Leary and/or Deputy Brady turn the investigative stop into an arrest. United States v. Crittendon, 883 F.2d 326 (4th Cir. 1989) (brief handcuffing of suspect

necessary to maintain status quo and protect officer did not convert Terry stop into arrest). The fact or perception that a subject is not "free to leave," standing alone, is insufficient to convert a Terry stop into an arrest. Leshuk, 65 F. 3d at 1109-10.

For all the above reasons, the undersigned recommends Defendants' respective Motions to Suppress be **DENIED**.

## RECOMMENDATION

For the reasons herein stated, it is **RECOMMENDED** that Larry Lyons' and Billy George Leary's Motions To Suppress [Docket Entries 57 and 66, respectively], be **DENIED.**

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 28th day of September, 2005.

/s/ *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

8